UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

―――――――――――――

№ 19-CV-4419 (EK) (RER)
―――――――――――――

GENEVA LABORATORIES LIMITED AND UNION-SWISS (PROPRIETY) LIMITED,

Plaintiffs,

VERSUS

NIKE WEST AFRICAN IMPORT AND EXPORT INC. ET AL.,

Defendants.

―――――――――――

**REPORT & RECOMMENDATION**

August 16, 2021
―――――――――――

TO THE HONORABLE ERIC R. KOMITEE
UNITED STATES DISTRICT JUDGE

**RAMON E. REYES, JR., U.S.M.J.:** [1]

Plaintiffs Geneva Laboratories Limited ("Geneva") and Union-Swiss (Proprietary) Limited ("Union Swiss") (collectively, "Plaintiffs") filed this trademark counterfeiting and infringement, suit against Nike West African Import and Export Inc. ("NWA") and Elfreda Akintewe,[2] also known as Elfreda Nike Akintewe, ("Akintewe") (collectively, "Defendants"). (Dkt. No. 1 ("Compl.") ¶1). Presently before the Court is Plaintiffs' motion to enforce the settlement

―――――

[1] Linda Boardman, a rising second-year student at Boston University School of Law and an intern in my Chambers, provided substantial assistance in researching and drafting this Report and Recommendation.

[2] The Complaint also names XYZ Companies 1-5 and John Does 1-5 as defendants. These unnamed defendants have not participated in any way in this action. Because Plaintiffs have failed to identify and serve these defendants within 120 days after the filing of the Complaint as required by Federal Rule of Civil Procedure 4(m), the Court respectfully recommends that the claims against named XYZ Companies 1-5 and John Does 1-5 be dismissed without prejudice.

1

agreement that was discussed during conferences held before Magistrate Judge Steven M. Gold on October 27 and 30, 2020. (Dkt. Nos. 23, 25). Your Honor referred the motion to me for a report and recommendation. (Order dated 1/19/2021). For the reasons discussed herein, I respectfully recommend that Your Honor enforce the settlement agreement.

## BACKGROUND

Rather than focusing on the merits of Plaintiffs' complaint, this Report revolves around off the record settlement discussions and whether the parties intended to be bound by an oral settlement agreement.[3]

Plaintiffs commenced this action on July 31, 2019, alleging that Defendants "import[ed], [sold], offer[ed] for sale, distribut[ed], promot[ed] and advertised skincare products bearing counterfeits and infringements of Geneva's federally registered trademarks." (Compl. ¶ 1).

The parties engaged in discovery and settlement discussions. (*See* Dkt. No. 20). Plaintiffs' counsel sent a draft consent judgment and permanent injunction ("the Draft") to Defendants' counsel on March 13, 2020, which included non-financial settlement terms and Plaintiffs' proposed settlement amount of $30,000. (Dkt. No. 23 at 1; Dkt. No. 26 ("Nov. 20 Tr.") 4:3–6; Dkt. No. 28-2 at 17–27). From March to August 2020, Defendants' counsel emailed Plaintiffs' counsel approximately seven times saying he was unable to communicate with his clients and therefore had not discussed the proposed settlement with them. (Nov. 20 Tr. 4:6–5:1–9; *see* Dkt. No. 27 ("Defs.' Opp'n") at 3; Dkt. No. 27-3). On September 18, 2020, Defendants' counsel emailed

---

[3] All conferences were held before Magistrate Judge Gold. I was not involved in any settlement discussions. This case was reassigned to me on January 8, 2021. (Dkt. Entry dated 1/8/2021). Because I was not present at any of the conferences in which settlement discussions were held, and those conferences were not on the record, I rely on the facts as described by the parties in their motion papers as well as the transcript of the November 20, 2020, conference held before Magistrate Judge Gold. The September 22, October 27, and October 30, 2020, conferences were not recorded.

Plaintiffs' counsel stating, "I have now heard from Ms. Akintewe. Apparently, she has been in Nigeria, and is not able to get back to the United States until mid October 2020." (Dkt. No. 28-2 at 47, 49–50). Later that same day, Defendants' counsel sent another email stating, "I spoke to her about the settlement proposal as well." (*Id.*).

More than six months after Plaintiffs sent the draft settlement agreement to Defendants and several days after Defendants' counsel confirmed that he spoke to Akintewe about the settlement proposal, the parties appeared for a telephone status conference before Judge Gold on September 22, 2020. (Dkt. No. 20). Following the conference, Judge Gold instructed the parties to "continue their efforts to reach a settlement, and in particular to find a means by which [D]efendants might provide security for payments they seek to make over time." (*Id.*).

On October 27, 2020, the parties reported on the status of settlement discussions, and Judge Gold proposed a settlement amount of $15,000 to be made in five installments and proposed a lien on Defendant Akintewe's house as collateral. (Dkt. No. 21; Dkt. No. 23 at 3; Nov. 20 Tr. 6:13–16, 10:10–14). Counsel for Plaintiffs and Defendants were provided time to consider the settlement recommendation and report their position within three days. (Dkt. No. 21).

During the October 30, 2020, telephone conference before Judge Gold "[t]he parties report[ed] that they ha[d] reached a settlement." (Dkt. No. 22). The parties were ordered to submit a stipulation discontinuing the action or a status report indicating why they had not done so by November 20, 2020. (*Id.*).

Settlement discussions broke down before the parties were able to execute the written settlement. On November 11, 2020, the parties jointly filed a letter indicating they had reached an impasse in settlement discussions. (Dkt. No. 23). Plaintiffs contend that Defendants orally agreed

3

to the settlement amount and all other material settlement terms during the October 30, 2020, conference. (Dkt. No. 23 at 1). Defendants contend that they agreed only to the financial terms of the settlement during the October 30, 2020, conference and that the non-financial terms set forth in the Draft were not before Judge Gold during the October 27 and October 30, 2020, conferences. (Defs.' Opp'n at 2; Nov. 20 Tr. 6:10–11, 8:5–10).

Judge Gold held a telephone conference on November 20, 2020, to hear the parties' positions and subsequently ordered that the November 11, 2020 letter, (Dkt. No. 23), be construed as a motion to enforce settlement, (Dkt. No. 25). He shared the same recollection as Plaintiffs as to the settlement discussions held, including that the parties had orally agreed to all material terms for settlement during the October 30 conference. (Nov. 20 Tr. 2:24–3:1–5 ("[I]t was totally my understanding . . . that the parties had agreed on all material terms of the settlement, including the consent decree."). Defendants' position is that "there is no agreement as to the terms aside from the financial terms." (*Id.* 4:1–3). Your Honor referred Plaintiffs' motion to enforce the settlement agreement to me for a report and recommendation. (Order dated 1/19/2021).

## **LEGAL STANDARD**

District courts have the power to enforce settlement agreements in cases pending before them. *Meetings & Expositions, Inc. v. Tandy Corp.*, 490 F.2d 714, 717 (2d Cir. 1974) (per curiam) (collecting cases under federal and New York law); *Pure Love Music v. JMC Ent.*, No. 09-CV-1980 (ILG), 2010 U.S. Dist. LEXIS 12277, at *6–7 (E.D.N.Y. Feb. 12, 2010) (enforcing oral settlement read into the record before magistrate judge); *Francis v. HBO, Inc.*, No. 04 Civ. 7430 (DLC), 2005 U.S. Dist. LEXIS 7723, at *2, *11 (S.D.N.Y. Apr. 28, 2005) (same); *Brum v. Paragon Design Corp.*, No. 18 Civ. 5399 (JMF) (KNF), 2019 U.S. Dist. LEXIS 84802, at *9–10,

4

*14 (S.D.N.Y. May 15, 2019) (recommending enforcing oral settlement read into the record before magistrate judge), *adopted by* 2019 U.S. Dist. LEXIS 119063 (July 17, 2019); *Acun v. Merrill Lynch, Pierce, Fenner, & Smith*, No. 18 Civ. 7217 (GBD) (SN), 2020 U.S. Dist. LEXIS 7846, at *3, *19 (S.D.N.Y. Jan. 15, 2020) (same), *adopted by* 2020 U.S. Dist. LEXIS 36008 (Mar. 2, 2020), *aff'd*, 2021 U.S. App. LEXIS 8377 (2d Cir. Mar. 23, 2021); *Conway v. Brooklyn Union Gas Co.*, 236 F. Supp. 2d 241, 243–44 (E.D.N.Y. 2002) (adopting R. & R.) (enforcing settlement where parties agreed to three of four settlement terms before magistrate judge and agreed to fourth term through consensual *ex parte* discussions).

It is well established that a "settlement is a contract . . . [and] once entered into . . . is binding and conclusive." *Powell v. Omnicom*, 497 F.3d 124, 128 (2d Cir. 2007). As such, settlement agreements "are interpreted according to general principles of contract law." *Velazquez v. Yoh Servs., LLC*, No. 17 Civ. 842 (CM), 2017 WL 4404470, at *2 (S.D.N.Y. Sept. 25, 2017) (citing *Powell*, 497 F.3d at 128). The party seeking to enforce the settlement agreement bears the burden of proving that the parties entered into a binding agreement. *Grgurev v. Licul*, No. 15 Civ. 9805 (GHW), 2016 WL 6652741, at *3 (S.D.N.Y. Nov. 10, 2016).

The Second Circuit has not decided whether New York state law or federal law should be applied to the enforceability of oral contracts. *See Massie v. Metro. Museum of Art*, 651 F. Supp. 2d 88, 92 (S.D.N.Y. 2009) (adopting R. & R.); *Figueroa v. N.Y.C. Dep't of Sanitation*, 475 F. App'x. 365, 366 (2d Cir. 2012). However, choice of law is not an issue here because the Second Circuit has found no material difference between New York state law and federal common law standards. *Ciaramella v. Reader's Dig. Ass'n, Inc.*, 131 F.3d 320, 322 (2d Cir. 1997). As a result, "[c]ourts apply New York and federal common law interchangeably." *Clarke v. Peak*, No. 06-CV-4358 (SLT) (LB), 2009 U.S. Dist. LEXIS 128079, at *10 n.4 (E.D.N.Y. Mar. 4, 2009) (citing


*Powell*, 497 F.3d at 129 n.1), *adopted sub nom Clarke v. Shinseki,* 2009 U.S. Dist. LEXIS 27438 (Mar. 31, 2009). Because the Court of Appeals has not ruled on this issue, I will examine both sources.

There is a presumption in favor of enforcement of settlements. *Febus v. Guardian First Funding Grp., LLC*, 90 F. Supp. 3d 240, 245 (S.D.N.Y. 2015); *see also Willgerodt ex rel. Majority Peoples' Fund for the 21st Century, Inc. v. Hohri*, 953 F. Supp. 557, 560 (S.D.N.Y. 1997) ("Settlement agreements are strongly favored in New York and may not be lightly cast aside."). The presumption favoring enforcement "is also consistent with basic contract principles, which maintain that reformation of a settlement agreement is an extraordinary remedy." *Rahman v. Kaplan Cornelia Inc.*, No. 12 Civ. 9095 (SN), 2014 WL 541851, at *4 (S.D.N.Y. Feb. 11, 2014) ("[R]eformation is appropriate only to correct a material, mutual mistake." (quoting 27 Richard A. Lord, Williston on Contracts § 70:33 (4th ed. 2012))).

Despite the presumption in favor of enforcement, a settlement agreement cannot be binding and enforceable unless there was an offer, acceptance, consideration, mutual assent, and intent to be bound. *Delyanis v. Dyna-Empire, Inc.*, 465 F. Supp. 2d 170, 173 (E.D.N.Y. 2006). The essential component to a settlement agreement, written or oral, is mutual assent of the parties. *Maffea v. Ippolito*, 668 N.Y.S.2d 653, 654 (N.Y. App. Div. 1998) ("Mutual assent is essential to the formation of a contract and a party cannot be held to have contracted if there was no assent or acceptance."). "While a written document is the most traditional evidence of mutual assent, parties may enter and be bound by an agreement without signing a fully executed contract." *Oparah v. N.Y.C. Dep't of Educ.*, No. 12 Civ. 8347 (JGK) (SN), 2015 U.S. Dist. LEXIS 90651, at *8 (S.D.N.Y. Mar. 9, 2015), *adopted by* 2015 U.S. Dist. LEXIS 90348 (July 10, 2015); *see also Winston v. Mediafare Ent. Corp.*, 777 F.2d 78, 80 (2d Cir.1986).

6

Parties may bind themselves orally, and the fact that they plan to later memorialize their agreement in writing does not prevent them from being bound by the oral agreement. *N. Fork Country, LLC v. Baker Publ'ns Inc.*, 436 F. Supp. 2d 441, 445 (E.D.N.Y. 2006) (citing *Ciaramella*, 131 F.3d at 322). When there is no signed written agreement, the central factor in determining whether the parties are bound by the agreement is whether there is evidence of the parties' intent to be bound. *See Powell*, 497 F.3d at 129; *Winston*, 777 F.2d at 80. Because courts "cannot decipher secretive or subjective intent of the parties," courts look for evidence of *objective* intent to be bound. *Oparah*, 2015 U.S. Dist. LEXIS 90651, at *9 (citing *Klos v. Polskie Linie Lotnicze*, 133 F.3d 164, 168 (2d Cir. 1997); 22 N.Y. Jur. 2d, Contracts § 29 (2013) ("In the formation of a contract, only the overt acts of the parties may be considered in determining mutual assent.")).

## DISCUSSION

Plaintiffs' counsel sent Defendants' counsel the Draft, about which Akintewe spoke with her counsel, and which included all of the non-financial terms of settlement in March 2020. (Dkt. No. 23 at 1; Nov. 20 Tr. 4:3–6; Dkt. No. 28-2 at 17–27, 49). The parties then orally agreed to the financial terms of the settlement before Judge Gold on October 30, 2020. (Dkt. No. 22; *see* Nov. 20 Tr. at 6:10–11("All we came to an agreement to was the financial.")). The Draft was largely complete and only needed to be modified to reflect the orally agreed upon financial terms of settlement. (Dkt. No. 28 ("Pls.' Reply") at 4–5; *see* Dkt. No. 28-2 at 62–64; Nov. 20 Tr. 7:6–12). Thus, the only remaining factors to consider in determining if the oral settlement is enforceable and binding are mutual assent and intent to be bound.[4]

---

[4] Case law does not clearly differentiate between mutual assent and intent to be bound. *See Scheinmann v. Dykstra*, No. 16 Civ. 5446 (AJP), 2017 U.S. Dist. LEXIS 61180, at *6–7 (S.D.N.Y. Apr. 21, 2017) ("The mutual assent and intent to be bound by the emails is clear from the emails"); *Estate of Brannon v. City of New York*, No. 14 Civ. 2849 (AJN) (SN), 2015 U.S. Dist. LEXIS 145473, at *9–10, *15 (S.D.N.Y. Oct. 19, 2015), *adopted by* 2016 U.S. Dist. LEXIS 31017 (Mar. 10, 2016). Thus, I address these factors simultaneously.

This Circuit has adopted a four-prong balancing test (the "*Winston* Test") to determine whether parties intended to be bound absent a written agreement. *Winston*, 777 F.2d at 80; *Ciaramella,* 131 F.3d at 323. Courts consider

> (1) whether there has been an express reservation of the right not to be bound in the absence of a writing; (2) whether there has been partial performance of the contract; (3) whether all of the terms of the alleged contract have been agreed upon; and (4) whether the agreement at issue is the type of contract that is usually committed to writing.

*Winston*, 777 F.2d at 80. Courts in this District also consider a fifth factor, fundamental fairness, in deciding whether to enforce a settlement agreement. *United States v. U.S. Currency in the Sum of Six Hundred Sixty Thousand, Two Hundred Dollars*, 423 F. Supp. 2d 14, 31 (E.D.N.Y. 2006), *adhered to in part on reconsideration*, 429 F. Supp. 2d 577 (E.D.N.Y. 2006), *and aff'd*, 242 F. App'x 750 (2d Cir. 2007). The *Winston* test does not assess "after-the-fact professed, subjective intent, but rather the parties' objective intent as 'manifested by their expressed words and deeds at the time.'" *Id.* at 26 (quoting *Hostcentric Techs., Inc. v. Republic Thunderbolt, LLC*, No. 04 Civ. 1621 (KMW) (AJP), 2005 WL 1377853, at *6 (S.D.N.Y. June 9, 2005)). "[W]here the parties intend to be bound, an oral settlement is binding 'even if one party has a change of heart between the time of the agreement to the terms of the settlement and the time those terms are reduced to writing." *N. Fork*, 436 F. Supp. 2d at 445 (quoting *Omega Eng'g, Inc. v. Omega, SA*, No. Civ. 3:98-2464, 2004 WL 2191588, at *8 (D. Conn. 2004)).

**I. Express Reservation Not to Be Bound**

*Winston* is a balancing test, but the first factor is the most important and has "the power to tip the scale slightly more than the other three." *U.S. Currency*, 423 F. Supp. 2d at 26; *see also Hostcentric Techs.*, 2005 WL 1377853, at *7 (collecting cases). The first factor is satisfied when there has been no express reservation, and when the circumstances and actions of the parties

8

indicate no reservation, of the right not to be bound absent a written agreement. *Conway,* 236 F. Supp. 2d at 249; *see R.G. Grp., Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 74 (2d Cir. 1984).

If there has been no express reservation, "the language and conduct of the parties can nevertheless 'reveal such an intent.'" *Sprint Commc'ns Co. L.P. v. Jasco Trading, Inc.*, 5 F. Supp. 3d 323, 332 (E.D.N.Y. 2014) (citing *Winston*, 777 F.2d at 81 ("Although neither party expressly reserved the right not to be bound prior to the execution of a document, language in the correspondence does reveal such an intent.")); *Lyman v. New York & Presbyterian Hosp.*, No. 11 Civ. 3889 (AJN) (JCF), 2012 WL 6135354, at *5 (S.D.N.Y. Dec. 11, 2012) ("Although this factor is phrased in terms of 'express' reservations, courts . . . also analyze whether the particular facts and circumstances of the case . . . demonstrate an implied reservation of the right not to be bound until the execution of a written agreement." (quoting *Lindner v. Am. Express Corp.*, No. 06 Civ. 3834 (JGK), 2007 WL 1623119, at *6 (S.D.N.Y. June 5, 2007))), *adopted by* 2013 WL 427178 (Feb. 1, 2013). Courts also look at the language in the settlement documents as evidence of the parties' intent to be bound. *Lyman*, 2012 WL 6135354, at *5–6; *Int'l Telemeter Corp. v. Teleprompter Corp.*, 592 F.2d 49, 55 (2d Cir. 1979) (finding evidence of intent to be bound on the face of the settlement documents). Boilerplate language in a written agreement is not the same as express reservation of an intent not to be bound. *U.S. Currency*, 423 F. Supp. 2d at 28 ("[B]oilerplate reservations were too little, too late, as the government was required, and failed, to expressly reserve the right not to be bound when it stood before me."); *cf. Ciaramella,* 131 F.3d at 324.

The first *Winston* factor weighs in favor of enforcement. From the time Defendants received the Draft in March 2020 to the settlement conferences before Judge Gold at the end of October 2020, Defendants had ample opportunity to express an intent not to be bound without a formal

9

written agreement yet never did so. (*See* Nov. 20 Tr. at 4–5:22, 7:6–8:1; Dkt. No. 28-2 at 30–50; Dkt. No. 27-4; Dkt. No. 23-1).

During that time, Defendant's counsel was engaged in settlement discussions, (Dkt. Nos. 28-2 at 49, 27-4 at 2–3),[5] even though he now claims he was unable to reach his client, (Defs.' Opp'n at 3–5; Nov. 20 Tr. at 4:1–5:9). Defendants also failed to express an intent not to be bound during any of the September 22, October 27, and October 30, 2020, conferences before Judge Gold. (Dkt. No. 23 at 3; Nov. 20 Tr. at 7:6–8:1). What is more, the email communications between Plaintiffs and Defendants following the October 30 conference confirmed the parties' understanding that a settlement had been reached.[6] (*See* Dkt. No. 28-2 at 54). These conferences and email exchanges would have been appropriate opportunities to state an intent not to be bound by that oral agreement, yet Defendants did not expressly state any such intention. Plaintiffs' counsel sent Defendants' counsel a revised version of the Proposed Judgment that reflected the financial terms agreed to before Judge Gold; no other terms of the Proposed Judgment were amended in any way. (Dkt. No. 28-2 at 56–68).

Further, the language in the Draft does not demonstrate a reservation of the right not to be bound absent a written agreement. (*See generally* Dkt. No. 23-1); *Conway*, 236 F. Supp. 2d at 249. The Draft does not contain language specifically stating that the agreement shall not become effective until signed. (Dkt. No. 23-1 at 13); *see Ciaramella,* 131 F.3d at 324. Boilerplate language in the draft settlement agreement stating that the parties are bound by their signature is not

---

[5] In an email exchange dated September 18, 2020, Defendants' counsel stated to Plaintiffs' counsel that, "I spoke to [Akintewe] about the settlement proposal," and then stated concerns with only the financial terms of the Draft. (Dkt. Nos. 28-2 at 49, 27-4 at 2–3).

[6] In an email exchange dated October 30, 2020, Plaintiffs' counsel stated to Defendants' counsel that, "[w]e will prepare a modified version of the Consent Judgment and Permanent Injunction consistent with Magistrate Judge Gold's proposal, and today's clarifications, and send it to you for review some time next week." (Dkt. No. 28-2 at 54). Defendants' counsel replied, "I look forward to receiving the documents." (*Id.*).

equivalent to an express provision stating that the agreement is not binding until executed.[7] *See Conway,* 236 F. Supp. 2d at 249; *U.S. Currency*, 423 F. Supp. 2d at 29.

I find no evidence of express or implied reservation of an intent not to be bound prior to a written agreement in the text of the Draft or through Defendants' communications and actions. *See Winston*, 777 F.2d at 81; *Lopez v. City of New York*, 242 F. Supp. 2d 392, 393 (S.D.N.Y. 2003) ("As is typical with settlement agreements made in open court, both parties were afforded an opportunity to ask questions . . . and spell out any uncertain terms on the record."). Accordingly, the first *Winston* factor weighs heavily toward enforcing the settlement.

## II. Partial Performance

The second factor is "met when one party has partially performed its obligations under the settlement, and that performance has been accepted by the party disclaiming the existence of an agreement." *Conway*, 236 F. Supp. 2d at 250. Courts consider acts such as payment of the settlement amount, giving instructions for how to make payment, preparation, signing and delivering a stipulation of discontinuance to opposing counsel, or carrying out other terms of settlement as evidence of partial performance. *Ciaramella*, 131 F.3d at 325 (finding no partial performance when defendant did not pay money or complete other term of agreement); *U.S. Currency*, 423 F. Supp. 2d at 28–29 (finding partial performance when party drafted and delivered stipulation of discontinuance to opposing party for execution, discussed money transfer process, and filed forms required for payment); *Gildea v. Design Distribs., Inc.*, 378 F. Supp. 2d 158, 161 (E.D.N.Y. 2005) (finding no partial performance when no payment was made and when attorneys

---

[7] The language in the Draft stating, "[b]y their signature and acknowledgments below, the parties agree to be bound by the terms of this Consent Judgment" is not an express reservation of the right not to be bound until a written agreement is executed. (*See* Dkt. No. 23-1 at 13); *cf. Ciaramella*, 131 F.3d at 324 (finding language in draft settlement stating, "[t]his Settlement Agreement and General Release shall not become effective . . . until it is signed" indicated parties did not intend to be bound without written settlement).

11

failed to prepare, sign and deliver stipulation of discontinuance). When both parties stop actively litigating the case based on the apparent settlement, courts may construe this as partial performance. *See Alvarez v. City of New York*, 146 F. Supp. 2d 327, 336 (S.D.N.Y. 2001); *Waite v. Schoenbach*, No. 10 Civ. 3439 (RMB) (JLC), 2011 WL 3425547, at *7 (S.D.N.Y. Aug. 5, 2011), *adopted by* 2011 WL 6326115 (Dec. 16, 2011); *Lopez*, 242 F. Supp. 2d at 393–94; *Conway*, 236 F. Supp. 2d at 250. However, lack of any performance of the terms of the settlement, such as payment of the settlement amount, can counterbalance the parties' decision to stop litigating. *See Lopez*, 242 F. Supp. 2d at 394 ("[C]ourts within this circuit have found that this fact does not weigh for or against settlement.") (citing *Conway*, 236 F. Supp. 2d at 250); *Walker v. City of New York*, No. 05-CV-0004 (JBW) (JMA), 2006 WL 1662702, at *8 (E.D.N.Y. June 15, 2006) (finding that "this factor does not appear to hinder nor help plaintiff's claim that the oral settlement is not binding," when there was no partial performance and neither party pursued litigation), *adopted* (June 15, 2006).

Here, there is no evidence of partial performance of the agreement by either party. (Defs.' Opp'n at 8; Pls.' Reply at 8). No arrangements have been made or instructions given for how to exchange funds, no settlement funds have been paid, no liens have been granted, the parties have not signed a written agreement, and the case has not been dismissed. (*Id.*) Additionally, neither party has pursued litigation since the October 30 conference. (Nov. 20 Tr. 11:7–10; *see generally* Order dated 1/25/2021). Because active litigation has not resumed and there is no evidence of partial performance, this factor does not weigh in either direction. *See Conway*, 236 F. Supp. 2d at 250; *Lopez*, 242 F. Supp. 2d at 393–94.

## III. Whether All Terms of the Alleged Contract Have Been Agreed Upon

The third factor of the *Winston* test analyzes "whether all of the terms of the alleged contract have been agreed upon." *Winston*, 777 F.2d at 80. "The Second Circuit has clarified that the third *Winston* factor should evaluate whether the parties have agreed 'on all *material* terms.'" *Brannon v. City of New York*, No. 14 Civ. 2849 (AJN) (SN), 2016 U.S. Dist. LEXIS 31017, at *8 (S.D.N.Y. Mar. 10, 2016) (adopting R. & R.) (citing *Ciaramella*, 131 F.3d at 325 (emphasis added)). Courts in this Circuit have found that this factor favors enforcement even when the parties are still negotiating certain terms.[8] *Lopez*, 242 F. Supp. 2d at 394; *Pretzel Time, Inc. v. Pretzel Int'l, Inc.*, No. 98 Civ. 1544 (RWS), 2000 WL 1510077, at *4 (S.D.N.Y. Oct. 10, 2000).

The most important term of a settlement agreement is the settlement amount. *Gildea*, 378 F. Supp. 2d at 161. If the parties have agreed to the settlement amount, courts often find that this factor favors enforcement even when the parties are still negotiating additional terms. *See Lopez,* 242 F. Supp. 2d at 394 (enforcing settlement when parties agreed to settlement amount but were negotiating terms that were neither substantial nor material). This factor also favors enforcement when parties fail to notify the court of remaining issues to be negotiated. *Lopez*, 242 F. Supp. 2d at 394 ("Although the parties are disputing the addition of certain terms to the settlement, at no time before this Court did either party raise these issues. Therefore, this factor favors settlement."); *Pretzel Time, Inc.,* 2000 WL 1510077, at *4 (finding this factor favored enforcement when the parties orally agreed to a settlement in principle and party challenging enforcement did not

---

[8] The Second Circuit has found that even "minor" or "technical" changes arising from negotiations over written language in the agreement can weigh against enforcement. *Powell*, 497 F.3d at 130; *Winston*, 777 F.2d at 82–83. However, remaining points of disagreement are relevant "only if [the changes] show that there were points remaining to be negotiated such that the parties would not wish to be bound until they synthesized a writing 'satisfactory to both sides in every respect.'" *Powell*, 497 F.3d at 130. Defendants do not dispute that they intended to be bound by financial terms agreed to orally on October 30, 2020. (Defs.' Opp. Br. at 2). Plaintiffs then amended only the financial terms of the Draft to reflect the settlement agreement reached before Judge Gold. (Dkt. No. 28-2 at 56–68).

13

immediately object); *Alvarez*, 146 F. Supp. 2d at 336-37 ("At no time during the conference did plaintiff . . . raise the three outstanding issues he now claims had yet to be negotiated.").

Neither party disputes that an oral settlement was reached on the financial terms.[9] (Nov. 20 Tr. at 4:1–3, 6:10–19; Defs.' Opp'n at 2; Pls.' Reply at 5). Defendants assert only that the non-financial terms of settlement contained in the Draft were not orally agreed to during the October 30 conference before Judge Gold. (Defs.' Opp'n at 2; Nov. 20 Tr. at 4:1–3, 6:10–19). They claim that "[b]y October 30, 2020, the Court had not even become aware that there [was] a [proposed consent judgment and permanent injunction] in this matter." (Defs.' Opp'n at 6). Plaintiffs assert that the non-financial terms were orally agreed to by reference to the Draft during each of the September 22, October 27 and October 30 conferences. (Pls.' Reply at 1). Plaintiffs' assertion is consistent with Judge Gold's impression and recollection of the settlement conferences. (Nov. 20 Tr. 2:20–3:9, 7:6–20). Judge Gold specifically referenced his awareness of the Draft. (*Id.* 3:2–5, 7:9).

Because those conferences were not recorded, and the Draft was not read into the record at those conferences, I cannot definitively say whether the non-financial terms in the Draft were referenced and orally agreed to before Judge Gold. However, based on the parties' email communications and motion papers, and the November 20 transcript, I find that the parties agreed to all the material terms of settlement. Defendants had clearly reviewed and discussed the Draft with their counsel before any of the settlement conferences. Defendants argue that by "the September 22 call, the [D]efendants had not been available to review the [Draft], and plaintiffs

---

[9] Defendants' counsel also states that he "did not understand" the terms of the lien. (Defs.' Opp'n at 5–6). For the reasons stated on the record by Judge Gold during the November 20, 2020 conference, counsel's purported confusion is unavailing. (Nov. 20 Tr. 10:8–14).

14

were well aware that [D]efendants had not reviewed the [Draft]." (Defs.' Opp'n at 5). This statement outright contradicts Defendants' counsel's September 18 email. (Dkt. Nos. 28-2 at 49, 27-4 at 2 ("I spoke to [Akintewe] about the settlement proposal as well"). Moreover, the timing of Ms. Akintewe's return to the United States is no excuse for not communicating all the terms of the proposed settlement.[10]

Defendants' counsel admits receiving the proposed settlement agreement in March, (Nov. 20 Tr. at 4:3–6; Defs.' Opp'n at 3), and admits discussing said agreement with Defendants in September, (Dkt. Nos. 28-2 at 49; 27-4 at 2). During the November 20 conference, Judge Gold stated for the record his understanding that "the parties had agreed on all material terms of the settlement, *including the consent decree*." (Nov. 20. Tr. at 3:2–4 (emphasis added)). Judge Gold also noted that Defendants' counsel did not object to any of the terms. (*Id.* at 7:7–12 ("I had no idea until after October 30th that you had any issues or hesitation about the consent decree that has been served upon you. You clearly had communication with your client before October 30th because you represented you were in a position to accept the financial terms.")).

For the foregoing reasons, I find that the parties agreed to all material terms of settlement, and this factor weighs in favor of enforcement. *See Alvarez,* 146 F. Supp. 2d at 336 ("[h]aving accepted the terms and conditions of the settlement agreement, plaintiff cannot now allege—after he has accepted the settlement agreement—that other terms remained.").

---

[10] Defendants' counsel said he discussed the settlement proposal with his client before she returned to the United States, rendering her whereabouts irrelevant to whether she reviewed the Draft. (Dkt. Nos. 28-2 at 49, 27-4 at 2). Even if Defendants' counsel had not openly stated that his client was aware of the proposed settlement terms, the timing of Akintewe's return to the United States is still irrelevant because an attorney's knowledge is imputed to their client. *Novak v. TRW, Inc.*, 822 F. Supp. 963, 974 n.13 (E.D.N.Y. 1993) ("There is a presumption that an agent will relay to its principal *any* relevant information that he has acquired."); *Veal v. Geraci*, 23 F.3d 722, 725 (2d Cir. 1994) (citing Restatement (Second) of Agency § 9(3) (1958)). With knowledge of the non-financial terms enumerated in the Draft, Defendants' counsel accepted the settlement before Judge Gold.

15

### IV. Whether the Agreement is the Type of Contract Usually Committed to Writing

Settlements are generally required to be in writing or made on the record in open court. *See Ciaramella,* 131 F.3d at 326; N.Y. C.P.L.R. § 2104 (McKinney 2003).[11] Courts in this District have enforced oral settlements if agreed to before a magistrate judge. *See Conway,* 236 F. Supp. 2d at 252 ("It is also important to note that the presumption in favor of written settlements or placement of these agreements on the record does not expressly prohibit enforcement of an oral settlement agreement."); *Monaghan v. SZS 33 Assocs., L.P.*, 73 F.3d 1276, 1283 (2d Cir. 1996) (Although the "parties' agreement did not meet the technical requirements of New York law for a binding settlement . . . substantial compliance" with these requirements was "deemed sufficient.") (citations omitted); *U.S. Currency*, 423 F. Supp. 2d at 30–31 ("[A]n agreement represented to [magistrate judge] in open court as final is just as binding on the parties as an agreement put on the record."); *Alvarez*, 146 F. Supp. 2d at 337 (enforcing a non-executed but largely complete written settlement agreed to orally); *Popovic v. N.Y.C. Health & Hosps. Corp.*, 579 N.Y.S.2d 399, 400 (N.Y. App. Div. 1992) (finding entry of settlement in court's own records sufficient to comply with § 2104). To determine whether a settlement agreement must be committed to writing, courts also assess the complexity of the agreement based on: "(1) the amount of money at issue, (2) whether the terms of agreement will carry into perpetuity, and (3) the length and complexity of the agreement itself." *Conway*, 236 F. Supp. 2d at 251 (citing *Winston*, 777 F.2d at 83).

The Draft is not complex. *See Scheinmann*, 2017 U.S. Dist. LEXIS 61180, at *11 (finding an agreement not complex because it involved "a relatively small amount of money ($15,000)."). Although the permanent injunction adds to the complexity, this agreement overall is not complex

---

[11] "There is, however, considerable disagreement within this Circuit as to whether § 2104 applies to cases in federal court, particularly those based on federal question jurisdiction." *Alvarez*, 146 F. Supp. 2d at 337 –38 (collecting cases).

16

based on the amount of money at issue, $15,000, and the fact that the non-financial settlement terms are relatively straight-forward.[12] *Cf. R.G. Grp.*, 751 F.2d at 77 (finding agreement complex when it involved twenty-year contracts "detail[ing] matters of capital structure for franchisees, purchase and development of real estate, construction of stores, trade secrets, transfers of interest, and rights on termination or default," and complaint alleged "at least" eighty million dollars in injuries); *Reprosystem, B.V. v. SCM Corp.*, 727 F.2d 257, 262–63 (2d Cir. 1984) (finding agreement complex when it involved four million dollar sale of six companies under the laws of five different countries).

Even if New York law is controlling, the § 2104 "open court" requirement does not bar enforcement of the oral settlement. The acceptance of the agreement before Judge Gold was oral and did not include reading all terms of the settlement into the record. (Nov. 20 Tr. 3:16–17, 7:13–14). However, the terms of the full settlement were written in the Draft—a consent judgment and permanent injunction—which Defendants had reviewed. (*Id.* 5:19–20; Dkt. Nos. 28-2 at 49; 27-4 at 2). The only terms that needed to be changed in the Draft were the settlement amount and form of collateral, (Dkt. No. 28-2 at 56–68), and Defendants are not contesting these terms, (Defs.' Opp'n at 2). Therefore, this factor favors enforcement. *See Brannon*, 2016 U.S. Dist. LEXIS 31017, at *9 (quoting *Hostcentric*, 2005 U.S. Dist. LEXIS 11130, *9) ("The *Winston* analysis 'would be a strange test if the fourth factor always favored finding no agreement on the ground that settlement agreements usually are written.'"); *Alvarez*, 146 F. Supp. 2d at 337 (finding fourth factor weighing in favor of enforcement when "there was a written settlement agreement that was

---

[12] The terms of the Draft include that Defendants acknowledge Geneva's exclusive rights in the trademark at issue; admit that they have imported, exported, distributed, advertised, offered for sale, and sold in commerce counterfeit items without authorization; and refuse to submit to inspection or produce certain records. (Dkt. No. 23-1 ¶ 6). The Draft also includes a permanent injunction enjoining Defendants from the activities at issue in this action. (*Id.* ¶ 9).

17

substantially complete."); *cf. Walker*, 2006 WL 1662702, at *9 (collecting cases) ("[S]ome courts have considered an oral settlement agreement that was drafted and transmitted between parties to qualify as an actual writing; thus nullifying the need for the four prong *Winston* balancing test.").

## V. Fundamental Fairness

In addition to the *Winston* factors, I find that fundamental fairness also weighs toward enforcement. "Although [fairness] is not ordinarily a factor that courts consider in deciding whether or not to enforce an oral settlement agreement," courts that are "intimately familiar with the settlement, having worked closely with the parties to settle [the] case," find that "eminently fair and reasonable" terms weigh in favor of enforcement. *Conway*, 236 F. Supp. 2d at 252; *see also U.S. Currency*, 423 F. Supp. 2d at 31; *Walker,* 2006 WL 1662702, at *10.

Judge Gold was intimately familiar with the settlement, played a hands-on role in the settlement negotiations, and was involved in all the settlement conferences. (Dkt. Nos. 20–22; Nov. 20 Tr. at 2-3). In fact, it was Judge Gold who suggested the settlement amount and the lien to help the parties find a way for defendants to provide payment security. (Dkt. No. 23 at 3; Nov. 20 Tr. at 6:9–14). He was aware of the Draft transmitted between the parties. (Nov. 20 Tr. 3:2–5, 7:9). Based on our many years of working together, I trust that Judge Gold would only propose a settlement if the terms were appropriate and fair. Further, Defendants are represented by experienced counsel, (Nov. 20 Tr. 5:23–24), and the Draft contains substantially similar non-financial terms to the stipulated consent judgment and permanent injunction ordered by courts in this District and the Southern District of New York in other cases brought by Plaintiffs, (*see* Dkt. No. 23 at 2); *e.g., Geneva Lab'ys Ltd. v. Beauty New King Inc.*, No. 19-CV-01935 (MKB) (CLP) (July 24, 2019).

Thus I find that the fundamental fairness factor weighs in favor of enforcing the settlement.

\*     \*     \*

Nearly every factor weighs in favor of enforcing the oral settlement agreement made by the parties before Judge Gold during the October 30 conference. Accordingly, I respectfully recommend enforcing the settlement agreement.

## **CONCLUSION**

For the reasons set forth above, I respectfully recommend that Your Honor grant Plaintiffs' motion to enforce the settlement agreement. Any objections to the recommendations made in this Report must be filed with the Clerk of the Court and the Honorable Eric R. Komitee within fourteen days of receipt hereof. Failure to file timely objections waives the right to appeal the District Court's Order. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).

RESPECTFULLY RECOMMENDED.

*Ramon E. Reyes, Jr.*

RAMON E. REYES, JR.
United States Magistrate Judge

Dated: August 16, 2021
Brooklyn, NY