UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------x
 GENEVA LABORATORIES LIMITED and
 UNION-SWISS (PROPRIETARY) LIMITED,

                 Plaintiffs,         **MEMORANDUM & ORDER**
                                         19-CV-04419(EK)(RER)

         -against-

 NIKE WEST AFRICAN IMPORT AND
 EXPORT, INC., et al.,

              Defendants.

----------------------------------x

ERIC KOMITEE, United States District Judge:

       This case is before me on the plaintiffs' motion to enforce an oral settlement agreement.  In October 2020, the parties reported to Magistrate Judge Steven Gold that they had agreed to settle the matter, but they now dispute whether that agreement included certain provisions targeted to the risk of Defendants' non-payment.  The disputed provisions include, most prominently, one that would accord Plaintiffs a security interest in the personal residence of Elfreda Akintewe, the individual defendant and sole owner of Nike West.  In a Report and Recommendation ("R&R") dated August 16, 2021, Magistrate Judge Reyes recommended that I enforce the oral settlement agreement.  R&R, ECF No. 30.  Defendants filed a timely objection.  Objs. to R&R 2, ECF No. 31.  After an exhaustive review of the R&R, Defendants' objections, and the fuller

record, I adopt the recommendation and grant Plaintiffs' motion to enforce the settlement.

## I.   Background

Plaintiffs Geneva Laboratories Limited and Union-Swiss (Proprietary) Limited filed suit in 2019 against Nike West African Import and Export Inc. and Ms. Akintewe, among others since dismissed.  Geneva Labs, a foreign corporation, owns the rights to market and sell skincare oil products under the "BIO-OIL" brand.  Compl. ¶ 13, ECF No. 1.  Geneva Labs licenses distribution rights to Union-Swiss.  *Id.* at ¶ 14.  Plaintiffs allege that Defendants imported, sold, distributed, and promoted skincare products that infringed Geneva's registered trademarks. *Id.* at ¶ 1.

The path to the purported oral settlement in October 2020 was long and difficult.  After the parties engaged in discovery and early settlement discussions, Plaintiffs' counsel sent a draft settlement proposal — styled as a "Stipulated Consent Judgment & Permanent Injunctive Order" — to Defendants' counsel in March 2020 for his and his clients' consideration. This draft agreement, which I will refer to as the "March Draft," called for the Defendants to pay Plaintiffs $30,000 to settle the case.  Draft Consent J. and Permanent Inj. dated March 13, 2020 ("Mar. Draft"), Ex. 3 to ECF No. 28-2.  The March Draft did not provide for a security interest, either in Ms.

2

Akintewe's residence or otherwise.  This draft sat for a few months until September 18, 2020, when Defendants' counsel informed Plaintiffs that he had finally spoken with his client about the settlement.[1]

The parties participated in a telephone conference with Judge Gold on September 22, 2020.  In the minute entry following that conference, the Court stated:

> The parties will continue their efforts to reach a settlement, and in particular to find a means by which defendants might provide security for payments they seek to make over time.  THE COURT WILL HOLD A TELEPHONE CONFERENCE AT 11:30 AM ON OCTOBER 27, 2020, at which time counsel will be expected to report on the status of the parties' settlement discussions and whether a settlement conference might be productive.

Minute Entry of September 22, 2020 Conference, ECF No. 20.

The parties reconvened on October 27.  The parties discussed settlement; as is standard in settlement conferences in this district, the discussion was not recorded.  Nevertheless, the parties agree that Judge Gold proposed a trade-off by which the settlement payment would be reduced to $15,000 and in return, the Defendants would agree to a lien on Defendant Akintewe's Brooklyn residence.  Nov. 20 Conference

---

[1] During this period, Plaintiffs' counsel sent a series of emails to defense counsel.  Defense counsel reported some difficulties contacting his clients, among other things, in response.  *See* Defs.' Opp. to Mot. to Enforce Settlement 3, ECF No. 27.

Transcript 6:13-19, ECF No. 26; *see also* Letter from Pls.'
Counsel on Behalf of all Parties 4, 7, ECF No. 23.[2]

Plaintiffs have asserted — and Defendants have not
explicitly denied — that Judge Gold was proposing to insert
these new terms into the March Draft.  Specifically, Plaintiffs'
counsel "sought, and received, clarification from the Court that
the proposal would *not* be in lieu of Defendants' entry into" the
March Draft of the Consent Judgment — that is, that the other
terms in the March Draft would continue to form a part of the
proposal.[3]  Pls.' Position Statement in Nov. 11, 2020 Letter on
Behalf of Both Parties 4, ECF No. 23.  The minute entry
following the October 27th conference states: "The Parties will
consider the settlement recommendation proposed by the Court.
THE COURT WILL HOLD A FURTHER TELEPHONE CONFERENCE AT 2:30 PM ON
OCTOBER 30, 2020, at which time counsel will report on their
position with respect to settlement."  ECF No. 21.

The October 30 conference, too, went unrecorded, given
the continuation of settlement discussions.  The parties agree,
however, that they reported to Judge Gold that they had reached
agreement.  (They now dispute what the scope of the agreement

---

[2] Page numbers in citations to record documents (excluding deposition
transcripts) refer to ECF pagination rather than the documents' native page
numbers.

[3] As discussed below, Judge Gold would later confirm that this assertion
comported with his recollection of the discussion on October 27.

was, but not that they reported having reached one.)  The minute entry following this conference states: "The parties report that they have reached a settlement.  Counsel will submit a stipulation discontinuing the action, or a status report indicating why the parties have not done so, by NOVEMBER 20, 2020."  Minute Entry of October 30, 2020 Conference, ECF. No. 22.

On November 4, Plaintiffs' counsel sent a revised draft of the "Stipulated Consent Judgment" (the "November Draft") to defense counsel.  As expected, the November draft differed from the March Draft in that it called for Defendants to pay $15,000 rather than $30,000, and to do so in five installments rather than up front.  *See* Draft Stipulated Consent J. & Permanent Inj. Order dated November 4, 2020 ("November Draft") ¶ 7 (blacklined to show changes from the March 2020 Draft), Ex. 14 to ECF No. 28-2.  In addition, the November draft called for a lien on defendant Akintewe's residence to "guarantee Defendants' compliance with the foregoing payment amount and schedule."  *See id.* ¶ 7(b).

The November Draft also set forth two additional provisions responsive to the perceived credit risk: first, a provision that if the Defendants missed any scheduled payment, the unpaid balance of the settlement amount would be trebled and become due immediately; and second, that in the event of a non-

payment, Plaintiffs would "automatically" be granted a lien on *all* of Defendants' property, including bank accounts, vehicles, inventory, and wages. *Id.* ¶ 7(d).

On receipt of the November Draft, defense counsel balked. He returned comments challenging not only the new provisions, but several provisions that were entirely unchanged from the March Draft — despite the record revealing no indication that he had objected to any provision of the March Draft at the October 27th or 30th conferences. Plaintiffs agreed to accept certain minor line-editing from Defendants. Given the larger impasse, however, the parties jointly filed a one-page letter indicating that settlement discussions had broken down. November 11, 2020 Letter on Behalf of Both Parties, ECF 23. The letter attached both parties' statements of position on the settlement negotiation and a blackline of the November Draft.

Plaintiffs' position statement painstakingly recited their recollection of the October 27th and 30th conferences over four pages in an effort to demonstrate that all material terms in the November Draft had been agreed to before Judge Gold and, in particular, that the lien on defendant Akintewe's house was to take effect upon execution of the settlement. Plaintiffs asked Judge Gold to enforce the oral agreement that the parties

had acknowledged on the record and cited case law in support of that contention.  Pls.' Position Statement 5-6.

Defendants submitted a much briefer position statement.  They contended that they understood from the settlement conferences that the security interest would attach to Akintewe's home *only* if and when Defendants failed to pay the settlement on the agreed schedule.  *See id.* at 7 (expressing defendants' position that "contrary to the agreement made at the October 30, 2020 conference, plaintiffs now insist that they must be granted a lien on defendant Elfreda Akintewe's home, whether the defendants default in the payments or not").  Defendants also disputed several provisions that were unchanged from the March Draft.

After receipt of this correspondence, Judge Gold held a conference on November 20 — this time on the record.  Minute Entry, ECF No. 25; Tr. of Proceedings on November 20, 2020, ECF No. 26.  He opened by stating that he "recall[ed] things as plaintiffs described" in their position statement, *see id.* at 2:18-22 — specifically, "that the parties had agreed on all material terms of the settlement, including the consent decree that . . . plaintiffs had forwarded to the defendants."  *Id.* at 3:2-5.[4]  Nevertheless, Judge Gold said that he would afford the

---

[4] Judge Gold seemed taken aback by the defense position.  He noted, for emphasis, that it was "totally my understanding" that the reported agreement subsumed the terms in the March Draft.  Nov. 20 Conference Tr. 2:25-3:1.

parties an opportunity to brief the question of whether he should enforce the oral agreement.  He subsequently construed the Plaintiffs' November 11 letter as a motion to enforce the oral settlement agreement.  *See* ECF No. 25.  After Judge Gold's retirement from the bench, I referred the motion to enforce to Magistrate Judge Reyes for report and recommendation.  *See* Order Dated January 19, 2021.

Judge Reyes submitted his R&R on August 16, 2021.  The R&R recommends that the settlement be enforced, concluding that the parties orally agreed to a binding contract at the October 30 conference before Judge Gold.  Defendants objected.

## II.  Legal Standard on Review of Report & Recommendation

A district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1).  Within fourteen days after a party has been served with a copy of a magistrate judge's R&R, the party "may serve and file specific, written objections to the proposed findings and recommendations."  Fed. R. Civ. P. 72(b)(2).  When a party submits a timely objection, a court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  28 U.S.C. § 636(b)(1)(C).

### III. Discussion

This dispute requires the Court to evaluate two related — but distinct — questions.  First, whether the parties reached an agreement: in other words, when the parties advised Judge Gold that they had reached an oral agreement, had they actually formed a meeting of the minds, and on what terms?  "A court cannot enforce a contract unless it can determine to what the parties agreed."  28 Glen Banks, New York Contract Law § 2:25, at 81 (2d ed. 2017) (citing *166 Mamaroneck Ave. Corp. v. 151 E. Post Rd. Corp.*, 78 N.Y.2d 88, 91 (1991)).[5]

The second question is whether, *assuming* the parties reached an oral agreement, they nevertheless manifested an intent to be bound only by a signed writing, such that the court should not enforce the oral agreement even though the requirements for a binding contract were otherwise satisfied.  It is well-settled that when a party to a contract negotiation "communicates an intent not to be bound until he achieves a fully executed document, no amount of negotiation or oral agreement to specific terms will result in the formation of a binding contract."  *Winston v. Mediafare Ent. Corp.*, 777 F.2d 78, 80 (2d Cir. 1985).

---

[5] Unless otherwise noted, when quoting judicial decisions this order omits all alterations, citations, footnotes, and internal quotation marks.

The R&R deals primarily with the second of these two questions, thoroughly analyzing whether the parties intended to be bound by the oral agreement they reported.  The R&R applies the familiar four-factor test laid out in *Winston v. Mediafare Entertainment Corp.*, 777 F.2d 78 (2d Cir. 1985).  Like the R&R, *Winston* began and ended with the second of the two questions above, perhaps because it was immediately apparent in that case that one party had manifested an intent only to be bound by a written and executed agreement.  Among other clear indications, the *Winston* court pointed to a promise by the attorney for the plaintiff (the party seeking to enforce the oral agreement) that he would hold the settlement check in escrow "pending execution by my client and delivery to you of two fully executed copies of the agreement."  *Id.* at 81.  This language, the court held, "confirmed the obvious understanding that the settlement contract would not be effective until executed by both sides," contrary to the plaintiff's new position.  *Id.*

Here, unlike in *Winston*, I find below that the parties did *not* manifest an intent only to be bound by a signed writing (as Judge Reyes also held).  For that reason, I must answer the prior question (whether the parties reached a meeting of the

minds, and on what terms) before reaching the second (whether a signed writing was required).[6]

A.   **The parties reached a valid oral agreement on all material terms in the November Draft of the Stipulated Consent Judgment.**

A "settlement is a contract . . . [and] once entered into . . . is binding and conclusive." *Powell v. Omnicom*, 497 F.3d 124, 128 (2d Cir. 2007).  Settlement agreements are "interpreted according to general principles of contract law." *Velazquez v. Yoh Servs., LLC*, No. 17-CV-842, 2017 WL 4404470, at *2 (S.D.N.Y. Sept. 25, 2017).  "The party seeking to enforce a purported settlement agreement bears the burden of proving that such a binding and enforceable agreement exists." *Grgurev v. Licul*, No. 15-CV-9805, 2016 WL 6652741, at *3 (S.D.N.Y. Nov. 10, 2016); *see also Fleming v. Ponziani,* 24 N.Y.2d 105, 111 (1969) ("[P]laintiff, in undertaking to prove the contract upon which his action is based, had cast upon him the burden of

---

[6] The R&R relies on additional cases that go straight to the application of the *Winston* factors, without a prior analysis of whether a meeting of the minds occurred.  R&R 4-5, ECF No. 30.  Several of those cases, too, are distinguishable, in that the parties had stated their agreement *and the terms thereof* on the record.  *See, e.g., Pure Love Music v. JMC Ent., Inc.*, No. 09-CV-1980, 2010 WL 550114, at *1 (E.D.N.Y. Feb. 12, 2010) (enforcing oral agreement read into the record before magistrate judge); *Francis v. Home Box Office, Inc.*, No. 04-CV-7430, 2005 WL 1020863, at *3 (S.D.N.Y. Apr. 28, 2005) (same), *Brum v. Paragon Design Corp.*, No. 18-CV-5399, 2019 WL 3222969, at *4 (S.D.N.Y. May 16, 2019), *adopted by* 2019 WL 3219345 (July 17, 2019) (recommending enforcement of oral settlement agreement read into the record before magistrate judge).  Given the on-the-record recitation, there was no dispute about the material terms.  Here, in contrast, there is no transcript or audio recording of Judge Gold or the parties describing the material terms of the oral agreement they reported.

establishing, by a preponderance of the evidence, that it was a good and valid contract . . . .").[7]

   "To form a valid contract under New York law, there must be an offer, acceptance, consideration, mutual assent and intent to be bound." *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 427 (2d Cir. 2004).  The offer, acceptance, and manifestation of intent do not need to extend to every potential contract term — only the material terms.  "If an agreement is not reasonably certain in its material terms, there can be no legally enforceable contract." *Cobble Hill Nursing Home, Inc. v. Henry & Warren Corp.*, 74 N.Y.2d 475, 482 (1989); *see also In re Express Indus. & Terminal Corp. v. N.Y. State Dep't of Transp.*, 93 N.Y.2d 584, 589 (1999) ("To create a binding contract, there must be a manifestation of mutual assent sufficiently definite to assure that the parties are truly in agreement with respect to all material terms.").  "[A]t some point virtually every agreement can be said to have a degree of indefiniteness," but "parties ... should be held to their promises." *Cobble Hill*, 74 N.Y.2d at 483.  "In contract law, 'essential terms' are those terms that are necessary in order to

---

[7] As Judge Reyes pointed out, the Second Circuit has not decided whether federal common law or New York law applies when determining the enforceability of oral settlement agreements in federal court, but it has concluded that there is no material difference between the two.  *See Ciaramella v. Reader's Dig. Ass'n*, 131 F.3d 320, 322 (2d Cir. 1997).

lend an agreement sufficient detail to be enforceable by a court." *Reyes v. Lincoln Auto. Fin. Svcs.*, 861 F.3d 51, 58 (2d Cir. 2017). The standard is "necessarily flexible," and courts should try not to apply it with "a heavy hand." *Cobble Hill*, 74 N.Y.2d at 482–83.

There must be "an objective meeting of the minds sufficient to give rise to a binding and enforceable contract." *Starke v. SquareTrade, Inc.*, 913 F.3d 279, 289 (2d Cir. 2019). "In determining whether the parties intended to enter a contract, *and the nature of the contract's material terms*, we look to the objective manifestations of the intent of the parties as gathered by their expressed words and deeds." *Stonehill Cap. Mgmt., LLC v. Bank of the West*, 28 N.Y.3d 439, 448–449 (2016) (emphasis added). "[D]isproportionate emphasis is not to be put on any single act, phrase or other expression, but, instead, on the totality of all of these, given the attendant circumstances, the situation of the parties, and the objectives they were striving to attain." *Brown Bros.*, 41 N.Y.2d at 399–400.

Here, Plaintiffs have carried their burden of demonstrating that the parties manifested a meeting of the minds on the oral agreement and all its material terms. As discussed below, those agreed-upon terms are: all terms contained in the March Draft, *plus* a small number of material terms added in the

13

November Draft — namely, the new (lower) dollar amount of the settlement payment and the new payment schedule; the lien on defendant Akintewe's residence on East 103rd Street in Brooklyn; the provision for treble damages in the event of a payment default; and a few minor edits by defense counsel, listed below. There is one new provision in the November Draft for which the record reveals no evidence of mutual assent (namely, the provision for a springing judgment lien on bank accounts, vehicles, and the like), but that provision is not material to the parties' meeting of the minds, for the reasons discussed below.

      ***The Terms in the March Draft.***  Judge Gold specifically stated his recollection that the parties' oral agreement extended to the terms in the March Draft.  At the November 20 conference, Judge Gold stated:

> I made a settlement recommendation [on October 27th].
> Then on October 30th, I was told that the parties
> reached a settlement and it was totally my
> understanding, and I'm saying this for the record so
> that we can refer back to it later, that the parties
> had agreed on all material terms of the settlement,
> *including the consent decree that . . . plaintiffs had
> forwarded to the defendants*.

Nov. 20, 2020 Conf. Tr. 2:24-3:5 (emphasis added).  Plaintiffs have produced evidence to support this conclusion as well, in the form of attorney Richard Straussman's comprehensive declaration (made under penalty of perjury).  *See* Dec. of

Richard Straussman, Esq. ("Straussman Decl.") ¶¶ 15-16, ECF No. 28-1. Defendants have submitted no evidence to contest Judge Gold's and plaintiffs' counsel's recollection that the oral agreement subsumed the March Draft in its entirety (subject to the changes discussed below). Defense counsel has argued that certain terms dating back to the March Draft — including a statutory damages provision — were not agreed to. But counsel participated in the October 27 and 30 settlement conferences with authority to settle the case.[8] He agreed on October 30 to the adjustments proposed by Judge Gold *to the Consent Decree*. And it is "an elementary principle of contract law that a party's subsequent change of heart will not unmake a bargain already made." *Omega Eng'g, Inc. v. Omega, S.A.,* 432 F.3d 437, 445 (2d Cir. 2005).

       ***The New Dollar Amount and Payment Schedule.*** Neither side disputes that the oral agreement included these terms, which appear in Paragraph 7 of the November Draft. *See* November Draft ¶ 7. Given the passage of time, the dates in the payment schedule need updating. The Court sets the following dates, in line with the same timeframe agreed to by the parties: May 4, 2022; June 6, 2022; July 5, 2022; August 4, 2022, and September 6, 2022.

---

[8] Defense counsel does not contend that he lacked actual and apparent authority to enter into a binding settlement.

### *The Lien on Defendant Akintewe's Residence.*

Defendants do not dispute that they agreed to a lien on defendant Akintewe's Brooklyn residence.  Defs.' Opp. to Mot. to Enforce Settlement 2, ECF No. 27.  They dispute, however, the conditions under which the lien would attach.  Plaintiffs argue that the oral agreement contemplated the lien attaching at the moment the Court so-ordered the consent decree, whereas Defendants insist that it would attach only upon a default.  *See* Defs.' Position Statement in Nov. 11, 2020 Letter on Behalf of Both Parties 7, ECF No. 23 ("Moreover, contrary to the agreement made at the October 30, 2020 conference, plaintiffs now insist that they must be granted a lien on defendant Elfreda Akintewe's home, whether the defendants default in the payments or not.").

The evidence overwhelmingly establishes that the oral agreement called for the lien to go into effect as soon as the judgment was entered.  This conclusion emerges, first and foremost, from Judge Gold's recollection of the settlement discussion: he recalled making "a proposal to resolve those financial terms pursuant to which the plaintiffs would settle for a smaller amount of money but have it secured against a piece of real property."  Nov. 20, 2020 Conf. Tr. 3:9-12.  Two things stand out in Judge Gold's phrasing: first, he uses the same verb tense to describe the payment as the security interest, suggesting that they would occur simultaneously; and

16

second, he conspicuously omits any suggestion that the security interest was to be conditional.  Judge Gold recalled, further, that this proposal was accepted.  *Id*. 2:24-25.  Plaintiffs' counsel's sworn declaration is consistent.  Straussman Decl. ¶ 18.  And once again, Defendants have offered no evidence, besides a lawyer's letters, to contest this, and even those lawyer's letters do not suggest that defense counsel *actually raised* any different timing at the settlement conferences. Defs.' Position Letter; Defs.' Opp. to Mot. to Enforce Settlement 2–4; Objs. to R&R 2.

The events leading to the settlement conferences, too, establish that the lien was to be effective upon the Court's acceptance of the Consent Decree.  Defense counsel had initially reported that his client wanted six months to pay the settlement amount.  *See* Straussman Decl. ¶ 13; Def. Counsel Email of Sept. 18, 2020, Ex. 10 to ECF 28-2.  Plaintiffs' counsel responded decisively: "Any settlement that does not require payment at the time of settlement is not acceptable."  Straussman Decl. ¶ 14; Pls.' Counsel Email of Sept. 18, 2020, Ex. 11 to ECF No. 28-2. Logically speaking, the only way this impasse could have been solved through a security interest would be if the security interest was obtained "at the time of settlement" — the time that plaintiffs otherwise were expecting to be paid.

Finally, the nature and purpose of a security interest support this conclusion.  A security interest is designed to provide recourse in the event of a debtor's default.  An indebted party's commitment to negotiate and implement a security interest only after it has defaulted provides little comfort, as Judge Gold observed.  *See* Nov. 20 Conf. Tr. 10:10-14.  Thus, this term — as reflected in the November Draft at Paragraph 7(b) — will be enforced.

*Treble Damages on Default.*  Plaintiffs' attorney's sworn declaration attested that Judge Gold proposed the treble-damages-on-default provision at the October 27 conference, *see* Straussman Decl. ¶ 17, and that the parties later accepted this proposal.  The provision was consonant with the March Draft, which had already provided for treble damages in the event of other types of breaches (such as further infringement).  *See* Mar. Draft ¶ 12(e).  As noted above, Defendants never challenged this provision and agreed to the preexisting terms of the March Draft (including this one) at the October 30 conference.  This provision was clearly among the agreed-upon terms of the parties' oral agreement, as reported on October 30.  It, too, will be enforced as written in the November Draft (at ¶ 7(d)).

*The After-Added Lien on Bank Accounts, Vehicles, and Other Assets.*  The November Draft contains the following new provision, not included in the March Draft:  "Upon such failure

18

[to make a payment when due], Plaintiffs shall automatically thereafter also have a lien on any and all assets held by or on behalf of defendants, including, but not limited to, bank accounts, personalty, vehicles, inventory, wages, etc., in the amount of treble the entire then-remaining unpaid balance." Plaintiffs say they believe this provision — establishing a "judgment lien" in defendants' property after a default, if not a perfected security interest — would apply by operation of New York law, whether or not it was included in the November Draft. It would be immaterial for that reason, if true, and it is also immaterial because the Plaintiffs already have sufficient security (via the lien on Akintewe's residence) to collect on the payment default in full (even if that full amount is trebled).  The incremental security, if any, provided by this provision is therefore immaterial.  The Court will direct the Plaintiffs to remove this language from Paragraph 7(d) of the November Draft — beginning with "Upon such failure, Plaintiffs shall automatically have" and extending through the end of Paragraph 7(d).

   ***November Changes Proposed by Defendants and Agreed to by Plaintiffs.***  Plaintiffs agreed to a few minor changes proposed by Defense Counsel in November after the parties

19

reported their agreement to Judge Gold.[9]  *See* Pls.' Position Statement 5.[10]  Those agreed-to changes are, accordingly, now part of the consent judgment and permanent injunction.  They are: changing the tense of the word "agreed" in Paragraph 7 to "agree"; adding in Paragraph 7(a) the phrase "or by check from Defendants' attorney's escrow account"; and in Paragraph 16 changing the word "Defendants" to "the parties hereto," the word "Plaintiffs" to "any other party," and the final use of the word "Defendants" to "the Parties."

*      *      *      *

For the reasons set out above, I conclude that the parties had — at the time they reported agreement to Judge Gold — actually agreed to all material terms of the settlement.  All that was left was for the parties to reduce the oral agreement into writing.  Therefore, I proceed now consider whether to enforce that settlement despite the absence of a written agreement.

---

[9] Defendants' Counsel's proposed changes may be found at ECF No. 28-2, at 71.

[10] Plaintiffs' counsel wrote: "In response to Defendants' counsel's proposed revisions, Plaintiffs' counsel assented to, and incorporated, three requested changes that were within the scope of the agreement or, in one case, made mutual, a non-material provision regarding consultation with counsel and non-inducement/reliance on representations and promises not embodied in the document."

**B.    The parties intended to be bound in the absence of a written agreement.**

Parties may freely enter into binding contracts without memorializing their agreement in a fully executed document. *Winston v. Mediafare Ent. Corp.*, 777 F.2d 78, 80 (2d Cir. 1985). Four factors guide the determination of whether the parties intended to be bound in the absence of a document executed by both sides:

> (1) whether there has been an express reservation of the right not to be bound in the absence of a writing; (2) whether there has been partial performance of the contract; (3) whether all of the terms of the alleged contract have been agreed upon; and (4) whether the agreement at issue is the type of contract that is usually committed to writing.

*Id.* "No single factor is decisive, but each provides significant guidance." *Ciaramella v. Reader's Digest Ass'n*, 131 F.3d 320, 323 (2d Cir. 1997).

In contesting the R&R's ultimate conclusion – that the settlement should be enforced – Defendants argue that five of the R&R's findings are erroneous. These findings were: (1) that the parties made no express or implied reservation not to be bound in the absence of a signed writing; (2) that the second *Winston* factor does not weigh in either direction; (3) that the parties agreed on all material terms of settlement; (4) that Defendants are not contesting the form of collateral; and,

(5) that fundamental fairness favors enforcement.  *See* Objs. to R&R, ECF No. 31.  None of these arguments has merit.

> 1.   Whether the parties expressly reserved the right not to be bound by an oral agreement.

This first *Winston* factor "is frequently the most important."  *Brown v. Cara*, 420 F.3d 148, 154 (2d Cir. 2005).  Here, it weighs heavily in favor of enforcing the oral agreement.  At no point did either party expressly reserve the right not to be bound by an oral agreement.  When such reservation appears in in a draft settlement agreement, courts hesitate to disrupt the expressed intentions of the parties.  *See, e.g., Ciaramella*, 131 F.3d at 324 (declining to enforce settlement agreement where draft document included clause stating: "This Settlement Agreement and General Release shall not become effective . . . until it is signed by [the parties]").

Neither the March nor the November Draft of the Stipulated Consent Judgment & Permanent Injunction Order contains such a provision.  On the contrary, they both speak as though they will be executed *after* a binding agreement has already been formed.  The November Draft, for example, says that "Defendants *agreed*" — past tense — to pay Plaintiffs the amount of Fifteen Thousand U.S. Dollars . . . ."  November Draft ¶ 7 (emphasis added).  This language is inconsistent with the idea that no binding agreement will come into effect until a written

contract is signed.  So, too, is Judge Gold's minute entry
following the October 30 conference: he wrote that the parties
"have reached a settlement" and that, as a next step, they would
"submit a stipulation discontinuing the action."  Minute Entry
of Oct. 30, 2020 Conference, ECF No. 22.  Again, the record
reveals no reservation of the right to be bound only by a signed
writing.

Defendants view the draft settlement agreement at
issue here as on all fours with *Ciaramella*.  Not so.  The draft
language here states that "[b]y their signatures and
acknowledgements below, the parties agree to be bound by the
terms of this Consent Judgment."  November Draft ¶ 19.  That
clause does not expressly reserve the right not to be bound by
oral agreement.  The *Ciaramella* contract contained a
substantially more explicit statement that "[t]his Settlement
Agreement and General Release shall not become effective until
it is signed by [the parties]."  131 F.3d at 324 (declining to
enforce settlement agreement).  "The mere intention to commit
the agreement to writing will not prevent contract formation
prior to execution."  *Winston*, 777 F.2d at 80.

In addition, the unsigned document in this case is
unlike the ones that courts declined to enforce in *Ciaramella*,
*Winston*, and other cases, for the novel reason that it is not
just a settlement agreement.  It served two functions: to

memorialize the settlement agreement, and to serve as a
*permanent injunction*.  This provides a reason to expect that the
parties would need to execute a writing, notwithstanding the
fact that they had already agreed orally, namely, that a judge
would not be able to enter the injunction without seeing it.  In
other words, the impetus for the written document emanated from
*the Court's* needs rather than from any reservation of rights by
the parties.

2.    Whether there has been partial performance of the
      contract.

     The second factor is whether there has been partial
performance of the contract.  Neither party here performed any
aspect of the oral agreement affirmatively.  Some courts
construe the parties ceasing to actively litigate the case based
on an apparent settlement as partial performance. *See, e.g.*,
*Alvarez v. City of New York*, 146 F. Supp. 2d 327, 336 (S.D.N.Y.
2001).  The parties here did not resume the litigation in the
ordinary course.  I agree with Judge Reyes's conclusion that
this factor weighs in neither direction.  *See* R&R 12.

3.    Whether all the terms of the agreement have been
      agreed.

     The third factor looks to whether all terms of the
contract have been agreed.  Put differently, this factor asks
whether there was "literally nothing left to negotiate." *R.G.
Grp., Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 76 (2d Cir.

24

1984). I need not repeat my findings in Section A of this order, explaining that the parties agreed on all material terms — indeed, all material *and immaterial* terms save one (the term about the after-acquired lien on bank accounts, vehicles, and the like). Suffice to say that this factor, too, weighs heavily in favor of enforcing the oral agreement.[11]

> 4. Whether the agreement is the type that would be committed to writing.

The final factor, whether the agreement is the type that is usually put into writing, weighs slightly against enforcing the oral agreement. "Where, as here, the parties are adversaries and the purpose of the agreement is to forestall litigation, prudence strongly suggests that their agreement be written in order to make it readily enforceable, and to avoid still further litigation." *Winston*, 777 F.2d at 83.

Under New York law, "settlements of any claim are generally required to be in writing or, at a minimum, made on the record in open court." *Ciaramella*, 131 F.3d at 326. New York Civil Practice Law and Rules § 2104 indicates that "[a]n

---

[11] This factor obviously overlaps with, but is not identical to, my "prior" question — *i.e.*, prior to the *Winston* factor analysis — of whether the parties agreed to all material terms and what those terms are. *See* Section A, *supra*. The *Winston* factor recognizes that parties with "literally nothing left to negotiate," 777 F.2d at 82, have less incentive to expend the effort to draw up a written agreement. (When Party A says "a haircut is $20," and Party B says "sounds good, let's do it," this factor recognizes the unlikelihood that they mean to write up the agreement before being bound.) This is conceptually distinct from the prior question of whether the parties had a meeting of the minds and on what material terms.

agreement between parties or their attorneys relating to any matter in an action, other than one made between counsel in open court, is not binding upon a party unless it is in a writing subscribed by him or his attorney or reduced to the form of an order and entered." The Second Circuit has observed that "substantial compliance" with section 2104 was sufficient for purposes of enforcing an oral agreement. *See Monaghan v. SZS 33 Assocs.*, 73 F.3d 1276, 1283 (2d Cir. 1996).

"The complexity of the underlying agreement, however, is an indication of whether the parties reasonably could have expected to bind themselves orally." *In re Lehman Brothers Holdings Inc.*, 739 F. App'x 55, 58 (2d Cir. 2018) . The agreement here is relatively simple: The parties agreed to terminate the litigation and settle for a modest amount to be paid on a schedule of dates. There were certain added complexities, as in the lien term, attorneys' fees provisions, and the like; ultimately, the Consent Judgment and Permanent Injunction runs fourteen double-spaced pages. But these were not so complicated that the parties couldn't agree to them orally in front of Judge Gold (as set forth above).

Defendants also argue that the Court should consider an additional factor — fundamental fairness. To the extent the notion of fundamental fairness forms part of the *Winston* test, I conclude that fundamental fairness weighs in favor of enforcing

the oral agreement.  The parties agreed in front of Judge Gold, with no reservation.  And Defendants' argument that the lien would attach only on default is both illogical and inconsistent with the record here, for the reasons stated above.

On balance, then, the *Winston* factors and the totality of the evidence leads to the conclusion that the oral agreement should be enforced.

This case presents a useful reminder of why it is so important for parties reaching an oral settlement agreement to state the terms of that agreement clearly on the record before departing a settlement conference.  *See Pierre v. Chase Inv. Services Corp.*, 561 F. App'x 71, 72 (2d Cir. 2014) ("Announcing the terms of a settlement agreement on the record in open court memorializes critical litigation events, and serves a "cautionary function" ensuring the parties' acceptance is deliberate.").  Given the clarity of the record here, however, the Court can divine the terms of the oral agreement that the parties reached and intended to enforce.  Those are the terms in the written draft agreements, with the modest changes referred to above.  Accordingly, the defendants should be bound to their agreement.

**IV.  Conclusion**

For the foregoing reasons, the motion to enforce the settlement is granted.  The parties are ordered to sign and submit a revised version of the Stipulated Consent Judgment and Permanent Injunction Order, in both Microsoft Word and PDF format, that conforms with this order by March 15, 2022.


SO ORDERED.


/s/ Eric Komitee
ERIC KOMITEE
United States District Judge


Dated:     March 7, 2022
           Brooklyn, New York

28